DUGAN, BRINKMANN, MAGINNIS AND PACE
BY:  RANDY C. GREENE, ESQUIRE
ATTORNEY I.D. RG7341
33 South Main Street
Mullica Hill, NJ 08062
856-223-8600
Attorney for Defendant Susan Knepper

RECEIVED
FEB 2 2 2005
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

FLOORgraphics, Inc., a Pennsylvania Corporation
      Plaintiff,

v.

Susan Knepper
      Defendant

NO: 04-0597(SRC)

RECEIVED
MAR 1 0 2005
AT 8:30 _____ []
WILLIAM T. WALSH
CLERK

## DEFENDANT SUSAN KNEPPER'S AMENDED ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM

1. Denied as conclusions of law.
2. Admitted.
3. Denied as stated.
4. Admitted.
5. Denied as conclusions of law.

### FIRST COUNT

6. Defendant incorporates by reference its answers to paragraphs one through five as if set forth at length.

7. Denied as conclusions of law.

WHEREFORE, defendant demands judgment against FLOORgraphics, Inc., including the costs of this action, attorneys' fees and such other and further relief as the Court may deem just and appropriate.

### FIRST AFFIRMATIVE DEFENSE

1. The complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2. Defendant did not breach any contract with plaintiff.

### THIRD AFFIRMATIVE DEFENSE

3. The plaintiff's claim is barred since defendant's claim has reached the state at which defendant may seek a coercive remedy

### FOURTH AFFIRMATIVE DEFENSE

4. The plaintiff's claim is barred since the rendering of a declaratory judgment will not terminate the controversy

### FIFTH AFFIRMATIVE DEFENSE

5. The Plaintiff's claim is barred since it is an obvious attempt to have the court adjudicate in advance the validity of a possible claim in some expected future law suit.

### SIXTH AFFIRMATIVE DEFENSE

6. The Plaintiff's claim is barred since no reason exists to invoke provisions of the Declaratory Judgments Act where another remedy is available

### SEVENTH AFFIRMATIVE DEFENSE

7. The employment at-will doctrine does not relieve plaintiff, the employer, of its contractual obligation to provide the compensation promised in return for the defendant's services

### EIGHTH AFFIRMATIVE DEFENSE

8. Under New Jersey Law, there is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient, in the absence of a showing to the contrary. Since the plaintiff's Offer Memorandum to the defendant is silent in regards to the status of stock options and commissions after an employee terminates employment, a clear implication can be drawn of a promise to pay defendant all monies owed.

### NINTH AFFIRMATIVE DEFENSE

9. Plaintiff's offer of stock options and commissions to defendant were binding legal entitlements, regardless of employment status.

### TENTH AFFIRMATIVE DEFENSE

10. Plaintiff had no contractual right to withhold stock options and commissions from defendant.

### ELEVENTH AFFIRMATIVE DEFENSE

11. Denying plaintiff's claim will prevent the unjust enrichment of the plaintiff and force restitution to the defendant of something that in equity and good conscience does not belong to the plaintiff.

### TWELFTH AFFIRMATIVE DEFENSE

12. Because defendant was an at-will employee, plaintiff of course remained free to change the method and stipulations regarding stock option and commission payments, however, plaintiff could only make such a change prospectively, after giving plaintiff prior notice that would afford her an opportunity to decide whether she wished to continue working.

### THIRTEENTH AFFIRMATIVE DEFENSE

13. The retroactive application of the new regulations regarding the payment of commissions and stock options after the termination of employment, which eliminated benefits the defendant had already earned, constituted a breach of the terms of the employment contract established by the parties' prior course of dealings.

### FOURTEENTH AFFIRMATIVE DEFENSE

14. At no time did defendant and plaintiff enter into a non-compete agreement.

### FIFTEENTH AFFIRMATIVE DEFENSE

15. Defendant has at all times been reasonable and has acted in good faith.

WHEREFORE, defendant demands judgment against FLOORgraphics, Inc., including the costs of this action, attorneys' fees and such other and further relief as the Court may deem just and appropriate.

### COUNTERCLAIM

By way of Counterclaim, the defendant Susan Knepper says as follows:

1. At all material times, defendant was and is a resident of Illinois.

2. On or about November 1, 1998, defendant executed an Offer Memorandum with regard to her employment in the Grocery Division of FLOORgraphics, in the position of Vice President Advertising Sales, Central Region. (See Offer Memorandum attached hereto as Exhibit "A").

3. Thereafter defendant Susan Knepper and plaintiff entered into a business relationship whereby defendant Susan Knepper agreed to solicit sales of various grocery products on behalf of plaintiff in exchange for payment of commissions and stock options.

4. On or about November 15, 2000, defendant resigned her position at FLOORgraphics, Inc.

5. Thereafter defendant Susan Knepper fully expected, under the terms of the aforementioned Offer Memorandum with FLOORgrahics, Inc., to be compensated for all outstanding commissions owed.

6. Furthermore, defendant Susan Knepper fully expected, under the terms of the aforementioned Offer Memorandum with FLOORgraphics, Inc., to retain the right to exercise her available stock options.

7. On or about December 1, 2000, defendant provided an e-mail to Richard Rebh of FLOORgraphics, Inc. advising that she wished to exercise all available stock options, and requested all information necessary to obtain same. (See December 1, 2000 e-mail to Richard Rebh from defendant Susan Knepper attached hereto as Exhibit "B").

8. On or about January 29, 2001, defendant's attorney, Jac A. Cotiguala, wrote to Richard Rebh requesting that he provide plaintiff with the documentation requested in her December 1, 2000 e-mail. (See January 29, 2001 letter from Jac A. Cotiguala to Richard Rebh attached hereto as Exhibit "C").

9. On February 22, 2001, defendant Susan Knepper forwarded a check in the amount of $1,497.30 to FLOORgraphics as payment for shares of stock as outlined in the Offer Memorandum attached as Exhibit "A". (See February 22, 2001 correspondence attached hereto as Exhibit "D").

10. On September 15, 2003, defendant Susan Knepper wrote to Richard Rebh of FLOORgraphics requesting that the stock certificate for the shares purchased in February 22, 2001 be forwarded to her attention. (See September 15, 2003 correspondence attached hereto as Exhibit "E").

11. As of today's date, defendant has not received the commissions owed to her as outlined in the Offer Memorandum, nor has she been forwarded the stock certificate's for the shares purchased in February 22, 2001.

12. As a proximate result of plaintiff's misconduct, defendant has sustained financial losses and other consequential damages.

13. Plaintiff breached their agreed upon contractual obligations to defendant pursuant to the Offer Memorandum attached as Exhibit "A". As a proximate result thereof, defendant has sustained financial losses and other consequential damages.

WHEREFORE, defendant demands judgment against FLOORgraphics, Inc., including the costs of this action, attorneys' fees and such other and further relief as the Court may deem just and appropriate.

## COUNT I - PROMISE CAUSING DETRIMENTAL RELIANCE/PROMISSORY ESTOPPEL

14. Plaintiff incorporates by reference paragraphs 1 thru 13 of the counterclaim as though set forth at length herein.

15. Anyone making a clear and definite promise

16. Who should reasonably expect that another will rely on the promise will be bound by the promise.

17. And incur liability to the other for damages proximately caused.

18. By the other's reasonable reliance on the promise.

19. Causing the detriment of a definite and substantial nature.

**WHEREFORE**, Defendant request judgment in her favor and against Plaintiff FLOORgraphics, Inc. including interest, costs, fees, and any other relief this Court deems just under the circumstances.

## COUNT II. OBLIGATIONS TO PAY SERVICES SOUGHT FOR OTHER (IMPLIED CONTRACT)

20. Defendant incorporates by reference paragraphs 1 thru 13 of the counterclaim as though set forth at length herein.

21. Anyone rendering services at the request of another.

22. Under circumstances which negate the idea that they were gratuitous.

23. May hold the requesting person liable for the reasonable value of the services.

**WHEREFORE**, Defendant request judgment in her favor and against plaintiff FLOORgraphics, Inc. plus interest, costs, fees, and any other relief this Court deems just under the circumstances.

### COUNT III. UNJUST ENRICHMENT

24. Defendant incorporates by reference paragraphs 1 thru 13 of the counterclaim as though set forth at length herein.

25. Anyone who receives a benefit without payment must (a) return the benefit to or (b) give reasonable compensation to the provider.

26. If retention of the benefit without payment would be unjust.

27. Such as where either:

    a. the provider expected remuneration from the beneficiary at the time he or she performed or conferred the benefit and enriched the beneficiary beyond the beneficiary's contractual rights.

    b. the provider in conferring the benefit expected remuneration or took necessary action to protect the other's or a third person's interest, and the beneficiary should have been on notice that the provider expected payment.

    c. an express contract between the parties was aborted due to mistake, statute of frauds, impossibility, or invalidity for other reasons, and the provider was not at fault.

**WHEREFORE**, Defendant requests judgment in her favor and against Plaintiff FLOORgraphics, Inc. plus interest, costs, fees, and any other relief this Court deems just under the circumstances.

### COUNT IV. QUANTUM MERUIT

28. Defendant incorporates by reference paragraphs 1 thru 13 of the counterclaim as though set forth at length herein.

29. Anyone who receives a benefit without payment must (a) return the benefit to or (b) give reasonable compensation to the provider.

30. If retention of the benefit without payment would be unjust.

31. Such as where either:

      a.    the provider expected remuneration from the beneficiary at the time he or she performed or conferred the benefit and enriched the beneficiary beyond the beneficiary's contractual rights.

      b.    the provider in conferring the benefit expected remuneration or took necessary action to protect the other's or a third person's interest, and the beneficiary should have been on notice that the provider expected payment.

      c.    an express contract between the parties was aborted due to mistake, statute of frauds, impossibility, or invalidity for other reasons, and the provider was not at fault.

**WHEREFORE**, Defendant requests judgment in her favor and against Plaintiff FLOORgrahics, Inc. plus interest, costs, fees, and any other relief this Court deems just under the circumstances.

## COUNT V. QUASI-CONTRACT

32.    Defendant incorporates by reference paragraphs 1 thru 13 of the counterclaim as though set forth at length herein.

33.    Anyone who receives a benefit without payment must (a) return the benefit to or (b) give reasonable compensation to the provider.

34.    If retention of the benefit without payment would be unjust.

35.    Such as where either:

      a.    the provider expected remuneration from the beneficiary at the time he or she performed or conferred the benefit and enriched the beneficiary beyond the beneficiary's contractual rights.

      b.    the provider in conferring the benefit expected remuneration or took necessary action to protect the other's or a third person's interest, and the beneficiary should have been on notice that the provider expected payment.

      c.    an express contract between the parties was aborted due to mistake, statute of frauds, impossibility, or invalidity for other reasons, and the provider was not at fault.

**WHEREFORE**, Defendant requests judgment in her favor and against Plaintiff FLOORgraphics, Inc. plus interest, costs, fees, and any other relief this Court deems just under the circumstances.

Dugan, Brinkmann, Maginnis and Pace

By: _____
RANDY C. GREENE, ESQUIRE
Attorney for Defendant, Susan Knepper

## CERTIFICATE OF SERVICE

I, Randy C. Greene, Esquire, Attorney for Defendant, Susan Knepper, hereby certify that I have served a true and correct copy of the foregoing Amended by First Class Mail, postage prepaid, on the following counsel of record this 16th day of February, 2005:

>Nathan M. Edelstein, Esquire
>123 Franklin Corner Road, Ste. 206
>Lawrenceville, NJ 08648

_____
RANDY C. GREENE, ESQUIRE

# EXHIBIT A

# OFFER MEMORANDUM

The following are the terms under which FLOORgraphics, Inc. (hereinafter the Corporation) offers to employ Sue Knepper in the Grocery Division of FLOORgraphics, Inc. as Vice President Advertising Sales, Central Region:

**Base Salary**--$85,000, with increases tied to position and annual reviews.

**Commissions**--1.25% on sales up to $2,000,000. A 0.50% accelerator (1.75%) on sales over $2,000,000 up to $5,000,000. An additional 0.75% accelerator (2.5%) on sales over $5,000,000, with no cap.

At $2,000,000 in sales, commissions are $25,000 for total compensation of $105,000. At $5,000,000 in sales, commissions are $77,500 ($25k on first $2M of sales; $52.5k on next $3M) for total compensation of $157,500.

**Stock**--Options on 2,500 shares, vesting over four years, with a $1.15 per share exercise price (the Corporation currently has 1.45 million outstanding, fully diluted shares [including shares subject to vesting]--this grant represents a quarter of a percent). First year vesting has a 12 month cliff (no vesting until a full year of employment; when that year passes, the full first year is considered vested), with monthly vesting for the remaining three years.

Compared to the investors' price this past spring ($11.50/share), the options have an immediate exercise value of $25,875, which can be viewed as a signing bonus (subject to full vesting and a liquid market). Compared to an agreed new financing price of $30/share, the options will a current value of $72,125 (same caveats) when that financing closes.

If the Corporation achieves its first year plan ($24 M in revenues from May 1998-April 1999), using valuation measures for similar public companies, these options will be worth $150,000 in May 1999 (4.5x historical revenues). If the Corporation achieves its second year plan ($46 M in revenues), these options will then be worth just under $300,000 in May 2000.

In addition, if the Corporation achieves its plan in year 1 and/or in year 2 and Ms. Knepper is a key contributor towards achievement of that plan, Ms. Knepper will receive additional options, the number of which to be determined by management (but could be as large as this initial grant).

**Benefits**--The Corporation will give Ms. Knepper $350/month towards the health plan of her choice.

**Car Allowance**-- A car allowance of $400.00 per month will be granted, as a draw against commissions.

**Vacation/Holidays**--The Corporation has approximately ten (10) paid holidays during the year. New employees receive two weeks (ten days) of paid vacation, with days increasing with tenure.

**Travel/Entertainment**--The Corporation will reimburse all approved, reasonable business expenses for travel and entertainment.

**Start Date**-- Ms. Knepper will start full-time work for the Corporation on or before November 1, 1998.

**Confidentiality Agreement / At Will Employee**-- Ms. Knepper will sign the Corporation's standard Confidentiality Agreement, which all employees have signed. Ms. Knepper recognizes that she is an at will employee, like all new employees. She will receive 30, 60, and 90 days reviews to know exactly where she stands in the start-up phase.

By signing below, the Corporation and Ms. Knepper accept and agree to these terms of employment:

_____  _____
Date                        Mike Devlin, VP & GM Grocery Division, FLOORgraphics

_____  _____
Date                        Sue Knepper

# EXHIBIT B

**Subject: CONFIDENTIAL**
**From:** sknepper <sknepper@floorgraphics.com>
**Date:** Fri, 01 Dec 2000 16:50:38 -0600

This serves to inform you that I am resigning my position as VP, Advertising Sales with FLOORgraphics, INC. effective December 15, 2000.

Pursuant to my Offer of Employment, I will exercise my stock options. Please let me know how and when to proceed.

The past two years have been both challenging and rewarding to me; and I wish you, George, Mike and all my colleagues at FGI continued success with the company's growth.

Sue

# EXHIBIT C

# JAC A. COTIGUALA & ASSOCIATES

30 NORTH LA SALLE STREET
SUITE 1724
CHICAGO, ILLINOIS 60602
(312) 939-2100 . FAX (312) 939-2200

January 29, 2001

**VIA CERTIFIED MAIL**
**and REGULAR MAIL**

Mr. Richard Rebh
FLOORgraphics, Inc.
5 Vaughn Drive
Princeton, NJ 08540

Re:   *Stock Option and Vacation due*
      *Susan Knepper*

Dear Mr. Rebh:

This letter is to advise you that I have the honor of representing Ms. Susan Knepper.

She provided me a copy of her Offer Memorandum for employment with FLOORgraphics. She informs me that she began work there on or before November 1, 1998 and that her last day of work was December 5, 2000. She also showed me a copy of her email to you of December 1, 2000 which informed you that she wished to exercise all available stock options and requested you to provide her the necessary information about what she needed to do in order to obtain the stock options. Finally she inform me that you have not responded to her request of December 1, 2000.

My client stands ready, willing and able to pay the money needed to exercise her stock options. Please provide me your analysis regarding how many shares she may purchase, to whom she should make out the check, where the check should be sent and when she can expect to receive her stock certificates.

On a different subject, she informs me that although she previously requested you to pay her the four days earned but unused vacation and that you have not responded to that request. Please be advised that my client intends to pursue her legal remedies if you do not resolve this vacation benefit situation by February 9, 2001.

Very truly yours,

Jac A. Cotiguala, Attorney at Law

JAC/lg

cc:   Ms. Susan Knepper

# EXHIBIT D

February 22, 2001

Mr. Richard Rebh
FLOORgraphics, Inc.
5 Vaughn Drive
3rd Floor
Princeton, New Jersey 08540

RE: **FLOORgraphics, Inc. Stock Options**

Dear Richard:

Enclosed please find a check made payable to FLOORgraphics, Inc. for $1,497.30. I am exercising my options agreement at a per share exercise price of $1.15 as outlined in my Offer Memorandum.

Please mail the stock certificate to me at my home address: 98 Carriage Road, North Barrington, Illinois, 60010. If you have any questions please feel free to give me a call at 847-382-5205.

Best Regards,

*Sue Knepper*

Sue Knepper

Encls.

cc:   Yves Anidjar (FGI)
      Jac Contiguala (Contiguala & Associates)

# EXHIBIT E

September 15, 2003

Mr. Richard Rebh
FLOORgraphics, Inc.
5 Vaughn Drive, Suite #200
Princeton, New Jersey 08540

Dear Richard:

It has been over two and a half years (see attached correspondence of 2/22/01) since I sent you my check in the amount of $1,497.30 to exercise my stock options agreement at a per share price of $1.15 as outlined under Paragraph Three "STOCK" in my Offer Memorandum. Since that time I have repeatedly sent you reminders via certified mail. There has been no response from you or anyone at FLOORgraphics, Inc.

Other former employees have exercised their options and received their certificates from you. I am appealing to you one last time for assistance in resolving this delinquent matter. As a former valued employee who left your organization in good standing, I am entitled to my vested shares. Unfortunately, if you do not respond to the terms of our agreement (signed by Mike Devlin at the time of my employment) within two weeks time from receipt of this letter, I will find it necessary to proceed as directed by my attorney, Mr. Jac Contiguala of Chicago.

I certainly hope a resolution can be reached prior to my initiating legal action to receive the certificates that are due. If you have any questions please feel free to call me at 847-382-5205 or, mail the certificates to the following address: 98 Carriage Road, North Barrington, Illinois 60010.

Regards,

Sue Knepper

Encls.

cc:   Jac Contiguala   (Contiguala & Associates)
      Yves Anidjar     (FLOORgraphics, Inc.)